WOODWARD *v.* STATE.

Opinion delivered May 2, 1927.

1. DISTURBANCE OF PUBLIC ASSEMBLAGE—EVIDENCE HELD INSUFFI-
   CIENT TO TAKE THE CASE TO THE JURY IN PROSECUTION FOR DIS-
   TURBING RELIGIOUS WORSHIP.—Evidence *held* insufficient to take the
   case to the jury in the prosecution of a mayor for disturbing
   religious worship, where he stopped a street meeting conducted in
   violation of city ordinance, after requesting that it be held on
   the courthouse grounds instead.

2. DISTURBANCE OF PUBLIC ASSEMBLAGE—SUFFICIENCY OF EVIDENCE.
   —To sustain a conviction for disturbing religious worship, it is
   necessary to show that defendant maliciously or contemptuously
   acted in a way to disturb and disquiet the congregation assembled
   for religious worship, in view of Crawford & Moses' Dig., § 2766.

Appeal from Independence Circuit Court; *S. M. Bone,* Judge; reversed.

*W. K. Ruddell* and *Coleman & Reeder,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

KIRBY, J. The appellant, Dr. Woodward, the mayor of the city of Batesville, brings this appeal from a judgment of conviction for disturbing religious worship, upon information filed before a justice of the peace and later upon appeal to the circuit court.

The city of Batesville has an ordinance prohibiting the holding of any kind of meetings for publicly expressing or promulgating any social, political or religious teaching, belief or doctrine, on the streets or sidewalks of the city, without first procuring a written permit from the mayor.

A man claiming to be a representative of the Salvation Army applied to the mayor for a permit to preach on the streets and sidewalks, which was refused on account of the crowded condition of the town, the mayor suggesting that the meeting be held in the courthouse yard, the usual place for such meetings, and where it would not obstruct streets and sidewalks.

The preacher, notwithstanding a permit was denied him, afterwards held the meeting complained about,

ARK.] WOODWARD *v.* STATE. 907

speaking from the wall of the courthouse yard, and described by one witness as follows: "This was on the busiest corner in Batesville, on Main and Broad Streets, right on the courthouse corner. People were thronging there that day, passing along the streets and sidewalks and through the crowd all the time; cars, trucks and wagons along the streets all the time, sounding their horns and keeping up a constant noise and confusion."

The mayor, in the absence of the marshal, was called on the telephone by a lawyer, from his offices in the Fitzhugh Building opposite the meeting, and informed that the preacher was disturbing everybody in that part of town, and asked that it be stopped. Dr. Woodward walked down the street, and found the preacher standing on the courthouse wall, "right at the corner of Broad and Main Streets, two of the busiest streets in the town, and the crowd was blockading both streets." He touched the speaker, and, with low voice and in a polite manner, suggested that he had asked him not to use the streets and sidewalks for meetings, and told him that he would have to get back on the courthouse grounds or quit, as he was blockading the sidewalks. He passed on, and, returning after a few minutes, and seeing the preacher continuing and the condition as before, walked up to speaker, took him by the arm and told him he would have to quit. The preacher stepped down from the wall, took up his grip, and they walked into the courthouse, where the mayor told him that it would not do to block the streets and sidewalks, that the business men near by were complaining, and it must be stopped. That he could fine him for it, but he was not going to. The Doctor also stated that he was a member of the church, had great admiration for the work of the Salvation Army, and had been a contributor to it for many years; that the other Salvation Army officers who came to the city used the courthouse yard for their services, which he considered a better place, not being subject to so much disturbance from the crowds passing by and only a little further

from Broad Street. He said he was not mad at the time and used no rough language.

The lawyer who called the mayor's attention to the disturbance stated that the Salvation Army man was on the courthouse wall holloring and talking awful loud, and could be heard all over that part of town. That his office was just across Broad Street from where the preacher was standing, and "There was so much noise and confusion I could not hear anything else; it interfered with my work; I just couldn't do anything; couldn't hear anything over the phone, he was making so much racket." Witness told the mayor that it was disturbing everybody, and that "he would like to have it stopped."

A physician, with offices in the same building, said he was sitting in his window overlooking the large crowd in the street and on the sidewalk and the preacher on the wall haranguing them; that the mayor came out of the courthouse, touched the preacher on the arm, beckoned or motioned to him, and he reached down and got his little grip, and they went into the courthouse together. Witness said the preacher was not praying at the time, and stopped talking, got his grip, and left with the mayor; that he had only been watching about five minutes, and had before been looking out occasionally, and did not see the mayor the first time he spoke to the preacher.

Other witnesses testified that the mayor jerked the man's coat and one said he jerked him down off the wall.

The court refused to instruct a verdict for the defendant and refused his requested instruction to find him not guilty for the reason that the undisputed proof shows that defendant was the mayor of the city and had a right to stop the violation in his presence of the city ordinance. From the judgment on the verdict finding him guilty, this appeal is prosecuted.

The court erred in not directing the verdict as requested. It was necessary to show in this case that appellant maliciously or contemptuously acted in a way to disturb and disquiet the congregation assembled for religious worship. Section 2766, C. & M. Digest; *Walker*

v. *State,* 103 Ark. 336, 146 S. W. 862.   The information is
not specific, and did not charge the committing of any
violence of any kind upon any of the persons so assem-
bled, but the conviction was doubtless had because of the
testimony of some of the witnesses, indicating that the
preacher was rudely seized and made to stop talking.
The undisputed testimony shows, however, that appel-
lant, mayor of the city, in the absence of the marshal, was
only attempting, as it was his duty to do, to prevent dis-
turbance to the citizens, some of whom had complained of
the meeting in violation of the ordinance, and asked that
it be stopped.

Even though some of the witnesses did not approve
of the mayor's action and seemed to think that he had
used more force than was necessary for the accomplish-
ment of the purpose, it cannot be held, although he
intended to do what was done, that it was done mali-
ciously or contemptuously to disturb and disquiet the
congregation or any member thereof.

According to his own statement and that of several
witnesses, the mayor was very considerate in the matter,
first quietly suggesting to the preacher that the meeting
had been complained about, and that he would have to
take the congregation into the courthouse yard or quit,
leaving it to his discretion to move the crowd or bring
the meeting to an orderly close.   He later, returning,
found the condition unchanged, and used no more force
than seemed necessary to accomplish the purpose,
explaining to the preacher that he was not going to fine
him, as could be done, for the violation of the city ordi-
dance, and was only preventing unlawful obstruction of
the streets and sidewalks as his duty required him to do.

The court erred in not directing a verdict of not
guilty as requested, and the judgment is reversed and
the cause dismissed.